IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MELISSA THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:14-cv-00092 |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

In this medical malpractice case, defendants Wythe County Community Hospital, LLC, Radiology Consultants of Wytheville, P.L.L.C., and Dayne K. Roberts, M.D. (collectively, Virginia defendants), move to strike defendant United States of America's expert disclosure of Lauren Parks Golding, M.D., and to exclude her as an expert on timeliness and relevancy grounds. The court heard oral argument on the motions on May 11, 2015, and it is now prepared to rule. For the reasons stated below, it will deny the motions. As set forth in its May 13, 2015 order, however, the court will allow the Virginia defendants to renew their relevancy arguments with a more complete record through motions *in limine*.

**I. BACKGROUND**

In September 2010, plaintiff Melissa Thompson went to the VA medical center in Beckley, West Virginia, complaining of abdominal pain. (Dkt. No. 34, First Am. Compl. ¶¶ 19, 24.)[1] Two days later, she underwent a CT scan on her abdomen. (*Id.* ¶ 28.) Upon reading the scan, one of the medical center's doctors noticed (as relevant here) a 1.2 cm soft-tissue density in

---

[1] For background purposes only, the court takes most of the facts recited in this section from Thompson's First Amended Complaint (Dkt. No. 34).

Thompson's right breast. (*Id.* ¶ 29.) In light of this finding, the doctor suggested that Thompson have a "mammographic evaluation." (*Id.*)

Later that month, Thompson returned to the VA medical center for a follow-up appointment with her primary health-care provider, Ann Lilly, a family nurse practitioner. (*Id.* ¶¶ 20, 30–31.) Lilly reviewed the results of the CT scan with Thompson and ordered a screening mammogram for her at Wythe County Community Hospital. (*Id.* ¶ 33.) Thompson had the mammogram in October 2010. (*Id.* ¶¶ 8, 40, 43.) Upon interpreting the mammogram, Dr. Roberts, a radiologist with Radiology Consultants of Wytheville, found a moderately dense "parenchyma" in Thompson's right breast. (*Id.* ¶ 45.) He dictated a report with this finding and sent it to Lilly. (*Id.* ¶ 46.) No additional tests were ordered. (*Id.* ¶¶ 50.)

In January 2012, Thompson returned to Wythe County Community Hospital for another screening mammogram. (*Id.* ¶ 54.) Dr. Roberts again interpreted it. (*Id.* ¶ 55.) And again no additional tests were ordered. (*See id.* ¶¶ 69(f).)

Roughly five months later, Thompson went to the VA medical center, complaining of "excruciating pain." (*Id.* ¶ 56.) Upon examining Thompson, Lilly found a mass in Thompson's right breast that was "inflammatory in nature." (*Id.* ¶ 58.) Later that day, Thompson had a limited ultrasound on the breast. (*Id.* ¶ 59.) It showed a mass. (*Id.* ¶ 60.) Almost two weeks later, Thompson underwent a diagnostic mammogram and another ultrasound. (*Id.* ¶¶ 61–63.) Both tests revealed a mass that was greater than 6 cm. (*Id.* ¶¶ 62–63.) About a week later, Thompson had a follow-up visit with Lilly. (*Id.* ¶ 65.) Lilly thought that the mass was breast cancer. (*Id.*)

After being diagnosed with breast cancer, Thompson underwent chemotherapy and radiation. (*Id.* ¶ 66.) She also had a bilateral mastectomy. (*Id.*)

2

In March 2014, Thompson filed this case against the defendants, asserting claims for medical malpractice. She alleges that the defendants or their employees breached the standard of care by (among other things) failing to order a diagnostic mammogram or ultrasound after her CT scan in October 2010 and her screening mammogram in January 2012. (*Id.* ¶¶ 68–69.) She claims that, if the defendants or their employees had ordered a diagnostic mammogram or ultrasound at these times, then her breast cancer "would have been timely and appropriately treated and she would not have a dismal diagnosis." (*Id.* ¶¶ 71, 73.)

The defendants answered denying these claims and discovery ensued. Under the court-approved discovery plan, the defendants were required to disclose their experts on or before March 2, 2015. (Dkt. No. 52, Agreed Order ¶ 4.) On February 27, the United States' counsel sent an e-mail to the other parties' counsel, asking for a two-week extension until March 16 to disclose its experts. (Dkt. No. 65–1, Feb. 27, 2015 e-mail from United States' counsel.) The parties consented.[2]

The United States disclosed one of its two retained experts on March 16. (Dkt. No. 60–2, Expert Disclosure of Melissa R. Baker, FNP 1, 6.) But it did not disclose the other, Dr. Golding, until March 17—a day after its two-week extension had expired. (Dkt. No. 60–3, Expert disclosure of Lauren Parks Golding, M.D. 1, 7; Dkt No. 65–3, Mar. 17, 2015 e-mail from United States' counsel.)

Dr. Golding is a radiologist who specializes in breast imaging. (Dkt. No. 60–3 at 13.) In her report, she says that Lilly, a United States employee, did not deviate from the standard of care in her treatment of Thompson but that the Virginia defendants or their employees did. (*Id.*

---

[2] The court expresses no opinion here as to the parties' authority to modify the United States' expert-disclosure deadline without the court's consent, *see* Fed. R. Civ. Pro. 16(b)(4), but notes that at least one district court within the Fourth Circuit has concluded that parties have no such authority. *E.g.*, *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, No. 1:03-cv-537, 2005 U.S. Dist LEXIS 46201, at *9 (M.D.N.C. July 7, 2005) ("[T]he parties had no authority to mutually agree to [extend the] deadline for expert reports.").

at 8.)  Specifically, Dr. Golding says that the Virginia defendants or their employees breached the standard of care by failing to document properly Thompson's concerns and complaints regarding her right breast.  (*Id.* at 8–9.)  Dr. Golding also says that the Virginia defendants or their employees breached the standard of care by failing to order a diagnostic mammogram or ultrasound after Thompson's CT scan in October 2010 and her screening mammogram in January 2012.  (*Id.* at 9–10.)  According to Dr. Golding, the January 2012 screening mammogram showed an "increased density" in Thompson's right breast that was not there on her October 2010 screening mammogram, and thus "[t]he standard of care required this finding to be further evaluated in the form of a diagnostic mammogram."  (*Id.* at 9.)

The Virginia defendants objected to the United States' untimely disclosure of Dr. Golding and asked that the United States withdraw it.  (*See* Dkt. No. 60–4, Mar. 24, 2015 e-mail from United States' counsel.)  In an e-mail to the Virginia defendants' counsel, the United States' counsel declined the request, explaining that, "[a]lthough [Dr. Golding's] report was completed by on [sic] March 16, there was a glitch in getting a signature on the report that had to be solved the following day by facsimile machine."  (*Id.*)  Counsel also explained that the United States "did not become aware of the need for a radiologist until we spoke to the VA providers at the depositions," and that "[t]here were further delays because Lewis Gale radiologists had either moved to the VA or were too busy, and Carilion radiologists treated [Thompson]."  (*Id.*)  Finally, counsel explained that, "[a]s of February 27, [he] had not discussed Dr. Golding's findings with her, nor received a draft report."  (*Id.*)

These motions followed.

4

## II.  DISCUSSION

The Virginia defendants move to strike Dr. Golding's disclosure and to exclude her as an expert for one or both of the following reasons: (1) the United States failed to disclose her before its extended expert-disclosure deadline passed; and (2) her opinions are irrelevant.  (Dkt. No. 60, Radiology Consultants of Wytheville and Dr. Roberts's Br. in Supp. of Mot. to Strike 4–8; Dkt. No. 63, Wythe County Community Hospital's Br. in Supp. of Mot. to Strike 3–6.)  The court addresses these grounds in turn.

**A.  The Propriety of Sanctions for the United States' Untimely Disclosure of Dr. Golding**

The Virginia defendants argue that the court should strike Dr. Golding's disclosure and exclude her as an expert under Federal Rules of Civil Procedure 16(f) and 37(c), because the United States failed to disclose her before its extended expert-disclosure deadline expired.  (Dkt. No. 60 at 4–7; Dkt. No. 63 at 3–6.)  The United States does not dispute that its disclosure of Dr. Golding was untimely.  (Dkt. No. 65, United States' Br. in Opp'n to Mots. to Strike 2, 4.)  But it contends that its failure to timely disclose her was "substantially justified and harmless" and that therefore the court should not strike her disclosure or exclude her as an expert under either Rule 16(f) or 37(c).  (*Id.* at 4–5.)

Rules 16(f) and 37(c) prescribe sanctions for (among other things) discovery violations.  Rule 16(f) states in pertinent part:

> (1)  ***In General.***  On motion or on its own, the court may issue any just orders, including those authorized by [Federal Rule of Civil Procedure] 37(b)(2)(A)(ii)–(vii), if a party or its attorney:
>
> . . . .
>
> (C)  fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f)(1)(C).

5

And Rule 37(c) provides in relevant part:

> (1)  ***Failure to Disclose or Supplement.***  If a party fails to provide information or identify a witness as required by [Federal Rule of Civil Procedure] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)  may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B)  may inform the jury of the party's failure; and
>
> (C)  may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1).

In arguing for or against sanctions for the United States' untimely disclosure of Dr. Golding, the Virginia defendants and the United States focus on Rule 37(c) and its test.  (Dkt. No. 60 at 4–7; Dkt. No. 63 at 3–6; Dkt No. 4–5.)[3]  The court thinks, however, that the issue of sanctions here is better analyzed under Rule 16(f) because, at the time of the United States'

---

[3] The United States submits that, while Rule 16(f) seems more applicable to the situation here, the court must nonetheless use Rule 37(c) because the Fourth Circuit recently applied it in *Wilkins v. Montgomery*, 751 F.3d 214 (4th Cir. 2014), to determine the propriety of sanctions for an untimely expert disclosure.  (Dkt. No. 65 at 3–4.) In that case, the appellant disclosed the name of her expert and produced his C.V. on the expert-disclosure deadline set forth in the scheduling order, but did not produce his preliminary report until two weeks later and did not produce his full report until two weeks after that, on the deadline for motions to exclude experts.  *Wilkins*, 751 F.3d at 219.  On the appellee's motion, the district court excluded the expert on the ground that the appellant had failed to disclose him timely under the scheduling order.  *Id.* at 220.  In evaluating the propriety of this sanction, the Fourth Circuit looked to Rule 37(c) and employed its test, which consists of five factors commonly referred to as the *Southern States* factors.  *Id.* at 221–23; *see also S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003).  Upon reviewing the factors, the Fourth Circuit concluded that the district court did not abuse its discretion in excluding the expert.  *Id.* at 223.

Contrary to the United States' assertion, the court does not believe that *Wilkins*'s application of Rule 37(c), as opposed to Rule 16(f), is controlling here.  To begin with, unlike the United States' expert disclosure in this case, the appellant's expert disclosure in *Wilkins* was timely under the scheduling order but incomplete under Federal Rule of Civil Procedure 26(a)(2).  In that scenario, Rule 37(c) appears to be the better fit because it specifically addresses the consequences of a party's failure to provide all of the information required by Rule 26(a)(2).  Moreover, *Wilkins* does not address the correctness of applying Rule 37(c) versus Rule 16(c) where, as here, a party's expert disclosure is complete under Rule 26(a)(2) but untimely under the scheduling order.  Indeed, *Wilkins* does not even mention Rule 16(f)—much less discuss it vis-à-vis Rule 37(c)—and the parties there did not raise the issue before the district court or the Fourth Circuit.

6

disclosure violation, there was a court-approved discovery plan in place. (Dkt. No. 52.) As the court has previously explained,

> [w]hen a dispute arises concerning violation of expert disclosure obligations pursuant to a court approved discovery plan, the Court should first look to Rule 16(f) for determining both compliance and sanctions as opposed to Rule 37(c). Rule 16(f) specifically speaks to noncompliance with a scheduling or pretrial order. Rule 37(c), on the other hand, is self-executing and will likely come into play later in the court proceedings, often at or near trial. It serves the situation where there is no discovery plan and the timing of the parties' disclosures is controlled only by the Federal Rules of Civil Procedure.

*Scott v. Holz-Her, U.S., Inc.*, No. 6:04-cv-68, 2007 U.S. Dist. LEXIS 79552, at *3–4 (W.D. Va. Oct. 26, 2007) (alteration in original) (quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002)); *accord Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, No. 1:03-cv-537, 2005 U.S. Dist LEXIS 46201, at *7–8 (M.D.N.C. July 7, 2005); *Luma Corp. v. Stryker Corp.*, 226 F.R.D. 536, 544 (S.D.W. Va. 2005).[4] The court will thus apply Rule 16(f) and its test in evaluating the propriety of sanctions for the United States' disclosure violation.[5]

Under Rule 16(f), a district court "has wide latitude in imposing sanctions on parties who fail to comply with pretrial orders and procedures." *World Wide Demil, LLC v. Nammo*, 51 F. App'x 403, 407 n.4 (4th Cir. 2002) (citing *Rambus Inc. v. Infineon Techs., A.G.*, 145 F. Supp. 2d 721, 736 (E.D. Va. 2001)). And it enjoys "considerable discretion in determining whether to

---

[4] This view is not, however, shared by all district courts within the Fourth Circuit. The District Court for the Eastern District of North Carolina has, for instance, applied Rule 37(c), not Rule 16(f), in deciding the propriety of sanctions for a party's failure to disclose a witness or expert in accordance with a deadline set forth in a scheduling order. *E.g.*, *United States v. Cochran*, No. 4:12-cv-220, 2014 U.S. Dist. LEXIS 12435, at *18 (E.D.N.C. Jan. 30, 2014) (applying Rule 37(c) in determining the correctness of sanctions for the plaintiff's untimely witness disclosure); *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631–32 (E.D.N.C. 2008) (using Rule 37(c) to decide the propriety of sanctions for the defendant's untimely expert disclosure).

[5] Though the court chooses to apply Rule 16(f) here, it would nevertheless reach the same result if it were to apply Rule 37(c) instead, since "the test for both rules is substantially the same." *Scott v. Holz-Her, U.S., Inc.*, No. 6:04-cv-68, 2007 U.S. Dist. LEXIS 79552, at *3–4 (W.D. Va. Oct. 26, 2007). Indeed, because of the similarity between the two rules and their tests, another district court within the Fourth Circuit recently noted that it did not "need [to] definitely determine which rule(s) and test(s) is/are appropriately applied" in deciding whether to impose sanctions for a party's untimely witness disclosure. *Cochran*, 2014 U.S. Dist. LEXIS 12435, at *19 n.2.

7

permit an expert, who is designated after the scheduling order deadline for doing so, to testify." *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 377 (D. Md. 1999) (citations omitted).

In deciding whether to impose sanctions under Rule 16(f), a district court considers the following four factors: "(1) the reason for failing to name the witness [or failing to complete expert reports]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Scott*, 2007 U.S. Dist. LEXIS 79552, at *5 (alteration in original) (quoting *Rambus*, 145 F. Supp. 2d 736).[6] The court reviews these factors in sequence.

### *(1) The United States' Reason for Failing to Disclose Timely Dr. Golding*

The United States offers several reasons for its untimely disclosure of Dr. Golding. First, it did not realize that it needed a radiology expert until after taking discovery depositions in November 2014. (Dkt. No. 60–4 at 1.) Second, it had difficulty finding a radiologist who could serve as an expert because the radiologists at one local hospital were treating Thompson, and the radiologists at another either had moved to the VA or were too busy. (*Id.*) Third, as of February 27, 2015, it still had not discussed Dr. Golding's findings or received her draft report. (*Id.*) And finally, when Dr. Golding sent her report late on March 16, she was unable to scan her signature. (Dkt. No. 65 at 2.) So, rather than disclose a "potentially confusing unsigned copy of the report," it elected instead to wait until she could fax her signature the next day. (*Id.*)

---

[6] As noted above, these factors are substantially similar to the *Southern States* factors employed under Rule 37(c). (Indeed, at least one district court within the Fourth Circuit has used the *Southern States* factors in its Rule 16(f) analysis. *Factory Mut. Ins. Co. v. DLR Contr., Inc.*, No. 3:04-cv-834, 2005 U.S. Dist. LEXIS 25876, at *50–51 (E.D. Va. Oct. 20, 2005) (applying the *Southern States* factors to determine the propriety of sanctions under Rule 16(f))). The only real differences between the two sets of factors are that the *Southern States* factors use the word "surprise" instead of the word "prejudice," and they include one more factor—"the extent to which allowing the evidence would disrupt the trial." *S. States Rack & Fixture*, 318 F.3d at 597. Again, the court would reach the same result here under either rule or set of factors.

8

The Virginia defendants submit that these reasons lack any merit. Wythe County Community Hospital contends that "[t]he United States' claim that it did not realize it needed a radiology expert in this case strains credulity." (Dkt. No. 63 at 5.) According to the Hospital, "[t]he issues in this case have been the issues in this case since its filing, and the discovery depositions taken in November 2014 merely amplified on that which was already known." (*Id.*) In any event, the Hospital maintains, "it is hard to imagine that the intervening four . . . months did not provide enough time for the United States to find an expert and finalize the expert's report." (*Id.*)

Radiology Consultants of Wytheville and Dr. Roberts add that the United States' excuse is "nonsensical" because "Dr. Golding's inability to scan her signature did not affect her ability to fax her signature." (Dkt. No. 66, Radiology Consultants of Wytheville and Dr. Roberts's Reply Br. in Supp. of Mot. to Strike 6.) "If Dr. Golding was able to fax her signature the day after the deadline," they continue, "then she should have done it on the actual deadline." (*Id.*) They further contend that "[t]here would be nothing 'confusing' about an unsigned report." (*Id.*)

The court agrees with the Virginia defendants that the United States' reasons for its untimely disclosure of Dr. Golding are without merit. Indeed, at oral argument, the United States conceded that its excuses are "weak." It also admitted that, although it did not yet have a signed copy of her report, it should have nonetheless disclosed Dr. Golding on March 16, rather than wait until it received her signature on March 17; it just did not think that one day would cause such a "firestorm." It was wrong.

Because the United States' reasons for its untimely disclosure of Dr. Golding lack any merit, the court concludes that the first Rule 16(f) factor weighs in favor of imposing sanctions on the United States for its disclosure violation.

9

### *(2) The Importance of Dr. Golding's Proposed Testimony*

The Virginia defendants advance several arguments for why Dr. Golding's proposed testimony is not important to the United States' case. Wythe County Community Hospital contends that her opinions are irrelevant. (Dkt. 63 at 4–5.) Since the United States has no pending cross-claims against the Virginia defendants, the Hospital maintains, whether they or their employees were negligent in treating Thompson "has no particular relevance to the United States' case." (Dkt. No. 63 at 4.)

For their part, Radiology Consultants of Wytheville and Dr. Roberts first contend that Dr. Golding's opinions as to the United States' employee, Lilly, are duplicative of opinions to be offered by the United States' other retained expert. (Dkt. No. 60 at 7.) Next, Radiology Consultants and Dr. Roberts argue that Dr. Golding's opinions as to them are "entirely unnecessary" because "[n]o one disputes that if [he] knew of the abnormal finding on Thompson's CT scan, then he should have recommended further testing." (*Id.*) And finally, Radiology Consultants and Dr. Roberts submit that Dr. Golding's opinion as to his reading of Thompson's January 2012 screening mammogram is irrelevant because it has "nothing to do within any claims in the case." (Dkt. No. 66 at 5.)

In response, the United States asserts that Dr. Golding's proposed "testimony is important to a determination of the issues at trial." (Dkt. No. 65 at 5.) According to the United States, Thompson "seeks to impose liability by asserting that . . . Lilly ordered a screening mammogram rather than a diagnostic mammogram, and Dr. Golding's expert testimony as to the test ordered is at the heart of the issues at trial." (*Id.*)

The court agrees with the United States that Dr. Golding's proposed testimony is important to the United States' case. First, her opinions go to Thompson's claims as to the

10

timing and adequacy of the testing done on her right breast—treatment in which Lilly participated as Thompson's primary health-care provider. Moreover, Dr. Golding's opinions shift the blame from Lilly to the Virginia defendants or their employees. And contrary to the Virginia defendants' view, the court is not aware of, and the Virginia defendants do not cite, any case law holding that, in a medical malpractice case, one defendant cannot point the finger at another defendant unless there is a pending cross-claim between them. This is not to say, however, that the court will admit each of Dr. Golding's opinions. As discussed below, the record before the court is insufficient for it to say at this stage that all of her opinions are relevant. The record is, however, sufficient for the court to determine that Dr. Golding's proposed testimony is, overall, important to the United States' case.

Since Dr. Golding's proposed testimony is important to the United States' case, the court finds that the second Rule 16(f) factor weighs against imposing sanctions on the United States for its disclosure violation.

### *(3) The Potential Prejudice in Allowing Dr. Golding's Proposed Testimony*

The Virginia defendants contend that the United States' untimely disclosure of Dr. Golding came as a complete surprise to them because they were not expecting the United States—a codefendant—to disclose an expert who would opine that they or their employees breached the standard of care in treating Thompson, especially given that it has no pending cross-claims against them. (Dkt. No. 60 at 5; Dkt No. 63 at 4; Dkt. No. 66 at 3–4.) Indeed, Radiology Consultants of Wytheville and Dr. Roberts submit that they would have never agreed to extend the United States' expert-disclosure deadline had they known that the United States was going to disclose such an expert. (Dkt. No. 60 at 5.)

11

The United States counters that Dr. Golding's opinions should not have surprised the Virginia defendants because Thompson's experts, Drs. Laurie Fajardo and Peter Dunner, "opine[] to similar effect" in their reports, and because the allegations in Thompson's complaint "give similar notice of the claims being made and the need to address them, and the parties have all retained experts in various fields to address the legal and factual issues." (Dkt. No. 65 at 4–5.) In short, the United States says, Dr. Golding's opinions "should come as no surprise given [their] expression by other medical professionals." (*Id.* at 5.)

Radiology Consultants of Wytheville and Dr. Roberts respond that "the United States' argument that Dr. Golding's report is of 'similar effect' to the opinions of Drs. Fajardo and Dunn[er] is disingenuous," because Dr. Golding is the first expert to criticize Dr. Roberts's reading of Thompson's January 2012 screening mammogram. (Dkt. No. 66 at 4.) In fact, Radiology Consultants and Dr. Roberts submit, Thompson herself makes no claim that he misread that mammogram; rather, her claim is that he should have ordered a diagnostic mammogram or an ultrasound afterward. (*Id.*) Thus, according to Dr. Roberts and Radiology Consultants, "the United States is attempting to inject an entirely new issue into the case." (*Id.*)

The court finds the Virginia defendants' arguments unconvincing. As an initial matter, in asking for a two-week extension of its expert-disclosure deadline, the United States made no representations that it would not disclose an expert who would attack the Virginia defendants or their employees. So, as the Virginia defendants conceded at oral argument, the surprise they complain of was created not so much by the United States' delay in disclosing Dr. Golding as by the contents of her disclosure.

Although the Virginia defendants may feel betrayed—or, as one of them put it at oral argument, "stabbed in the back"—by the United States' decision to turn on them, the court's

12

focus under Rule 16(f) is the prejudice that they would suffer if Dr. Golding were allowed to testify, despite her untimely disclosure.  The court believes that there is little to none.  First of all, the disclosure was only *a day* late.  The court could not find, and the Virginia defendants do not cite, a single case in which a district court excluded a party's expert merely because he or she was disclosed a day late.  And this court has previously refused to exclude a party's expert who was disclosed *more than a month* late.  *NKR, Inc. v. Forestland Group, LLC*, No. 1:04-cv-104, 2005 U.S. Dist. LEXIS 8704, at *3, 8–9 (W.D. Va. May 11, 2005).

Second, Dr. Golding's disclosure is complete under Rule 26(a)(2).  Generally, when a district court has decided to impose sanctions for an untimely expert disclosure, the disclosure was not only late, but also deficient.  *See, e.g.*, *Campbell v. United States*, 470 F. App'x 153, 155–57 (4th Cir. 2012) (affirming the district court's decision to exclude the plaintiff's expert because he was disclosed five days late, and because his report was inadequate under Rule 26(a)(2)); *Res-Care Inc. v. Roto-Rooter Servs. Co.*, No. 09-cv-3856, 2010 U.S. Dist. LEXIS 113682, at *3, 14 (N.D. Cal. Oct. 18, 2010) (excluding one of the defendant's experts and ordering the defendant to pay for the depositions of its three other experts because they were disclosed a day late, and because their reports were not produced, as required by Rule 26(a)(2)).  But here, Dr. Golding's disclosure contains all of the information required under Rule 26(a)(2): It states her opinions, the facts or data she considered in forming those opinions, her qualifications, the case in which she previously served as an expert, and the compensation she is receiving for her work in this case.  (Dkt. No. 60–3 at 8–11.)

Third, Dr. Golding was disclosed more than four weeks before the discovery cutoff date and more than four months before the trial date.  Thus, while her disclosure was untimely, it still left the Virginia defendants sufficient time to depose her and to disclose rebuttal opinions.  *See*

Fed. R. Civ. P. 26(a)(2)(D)(ii) (permitting a party to disclose contradictory or rebuttal "evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) . . . within 30 days after the other party's disclosure).[7]

And lastly, save perhaps for her opinion as to Dr. Robert's reading of Thompson's January 2012 screening mammogram, Dr. Golding's opinions are similar, if not identical, to those offered by Thompson's experts. The Virginia defendants, then, were on notice as to most of the expert opinion that would be offered against them at trial several months before the United States disclosed Dr. Golding.

For these reasons, the court believes that the Virginia defendants would suffer little to no prejudice if it allowed Dr. Golding to testify at trial, in spite of her untimely disclosure. It therefore concludes that the third Rule 16(f) factor weighs against imposing sanctions on the United States for its disclosure violation.

**(4)** *The Availability of a Cure for Any Potential Prejudice in Allowing Dr. Golding's Proposed Testimony*

The Virginia defendants argue that they are unable to cure the surprise caused by the United States' untimely disclosure of Dr. Golding because their expert-disclosure deadline has passed. (Dkt. No. 60 at 5; Dkt. No. 63 at 4.) Dr. Roberts and Radiology Consultants also contend that they cannot simply have their experts prepare supplemental reports to address Dr. Golding's opinions because "[Dr.] Roberts' read of the films has never before been an issue in the case, none of the present experts has given opinions on the subject." (Dkt. No. 66 at 5.) To adequately address the issue, Dr. Roberts and Radiology Consultants submit that they may have to hire entirely new experts. (*Id.*)

---

[7] As of the date that the court heard oral argument on their motions, the Virginia defendants had neither deposed Dr. Golding nor disclosed rebuttal opinions.

The United States responds that the Virginia defendants "have an uncompromised ability to cure any surprise." (Dkt. No. 65 at 5.) Since the trial is still several months away, it submits that the Virginia defendants, all of whom (with the exception of Wythe County Community Hospital) have obtained radiology experts, "may freely supplement expert reports to address or rebut opinions offered by other experts, or other evidence that arises during the course of discovery." (*Id.*)

The court finds the Virginia defendants' contentions unavailing. Though the United States disclosed Dr. Golding after their expert-disclosure deadline had expired, the Virginia defendants still could have disclosed rebuttal opinions under Rule 26(a)(2)(D)(ii), which states in relevant part:

> Absent a stipulation or a court order, [expert] disclosures must be made:
>
> . . . .
>
> (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(D)(ii).

Neither the court nor the parties altered this scheme for disclosing rebuttal opinions. (Dkt. No. 50, Scheduling Order ¶ 14; Dkt. No. 52 at 1.) Indeed, if anything, the court's scheduling order can be read as expanding it: "Supplemental and additional reports may be thereafter submitted, if submitted in sufficient time that discovery, if desired, can be completed reasonably by the discovery cutoff date without undue duplication and expense." (Dkt. No. 50 ¶ 14.) Thus, contrary to their position, the Virginia defendants could have disclosed rebuttal opinions, even though their expert-disclosure deadline had passed.

15

Nevertheless, at oral argument, the court informed the Virginia defendants that it was willing to extend their expert-disclosure deadline and the discovery cutoff date so that they could depose Dr. Golding and disclose rebuttal opinions. In response, they conceded that, if the court granted these extensions, then whatever surprise was created by the United States' untimely disclosure of Dr. Golding would be cured. On May 13, 2015, the court entered an order granting the extensions. (Dkt. No. 68, Order.) The Virginia defendants' arguments as to their inability to cure surprise are therefore moot.

Because any prejudice resulting from the United States' untimely disclosure has been cured, the court finds that the fourth Rule 16(f) factor weighs against imposing sanctions on the United States for its disclosure violation.

* * *

Since three out of the four Rule 16(f) factors weigh against imposing sanctions on the United States for its untimely disclosure of Dr. Golding, the court believes that the United States' disclosure violation was harmless. The court will thus deny the Virginia defendants' motions to strike her disclosure and to exclude her as an expert on the untimeliness ground.

B.  The Relevancy of Dr. Golding's Opinions

Radiology Consultants of Wytheville and Dr. Roberts also move to strike Dr. Golding's disclosure and to exclude her as an expert on the basis of relevancy. They argue that that her opinions are not relevant under Federal Rules of Evidence 401, 402, and 702, because the United States does not have any pending cross-claims against the Virginia defendants, and because "no one has formally claimed that [Dr.] Roberts incorrectly read [Thompson's] films." (Dkt. No. 60 at 8.)

In response, the United States first contends that this is not the appropriate time for the court to consider excluding Dr. Golding as an expert on relevancy grounds. (Dkt. No. 65 at 6.) This issue, the United States submits, "is better decided in a motion in limine, based on a more well-developed record, after the close of discovery." (*Id.*) Next, the United States argues that Dr. Golding's opinions are relevant regardless of whether it has pending cross-claims because they go to the issues whether its employee, Lilly, deviated from the standard of care and, if so, whether that deviation proximately caused Thompson's damages. (*Id.*) And lastly, the United States maintains that, if Thompson proves her case, then the trier of fact will have to determine the comparative negligence of the defendants under West Virginia law—which, in medical-malpractice cases, imposes "several, but not joint, liability against each defendant in accordance with the percentage of fault attributed to the defendant by the trier of fact," W. Va. Code Ann. § 55-7B-9(c) (2014)—and Dr. Golding's opinions will help it attribute negligence among them. (*Id.* at 6–8.)[8]

Although Dr. Golding's testimony is, on the whole, important to the United States' case, the court does not believe that it can say at this stage that all of her opinions are relevant because the record is insufficient—it does not establish the precise contours of Thompson's claims or the defendants' defenses. Further, the parties have not fully addressed whether Thompson's claims against the United States are governed by Virginia or West Virginia law or whether it matters for purposes of determining the admissibility of Dr. Golding's opinions. Accordingly, the court will deny the Virginia defendants' motions to strike Dr. Golding's disclosure and to exclude her as an expert on the relevancy ground. But, as set forth in its May 13, 2015 order, the court will permit

---

[8] The United States asserts that Thompson's claims against it are governed by West Virginia law, as opposed to Virginia law, because Lilly's treatment of Thompson occurred at the VA medical center in Beckley, West Virginia. (Dkt. No. 65 at 6–8.) The court expresses no opinion here as to which law applies to Thompson's claims against the United States.

17

the Virginia defendants to renew their relevancy arguments on a more complete record through motions *in limine*.

### III. CONCLUSION

For the reasons stated above, the court will deny the Virginia defendants' motions to strike Dr. Golding's disclosure and to exclude her as an expert. It will, however, allow the Virginia defendants to raise their relevancy arguments again with a more complete record through motions *in limine*. In accordance with the court's May 13, 2015 order, the Virginia defendants must file such motions on or before June 16, 2015.

The court will enter an appropriate order.

Entered: May 21, 2015.

*Elizabeth K. Dillon*
United States District Judge

18

Case 7:14-cv-00092-EKD-RSB   Document 69   Filed 05/21/15   Page 18 of 18   Pageid#: 420